# United States Tax Court

T.C. Memo. 2022-81

CHARLES G. KINNEY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 17664-19.                                    Filed July 28, 2022.

————————

Charles G. Kinney, pro se.

*Nchekube U. Onyima* and *Brian A. Pfeifer*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: With respect to petitioner's federal income tax for 2016, the Internal Revenue Service disallowed deductions for other expenses of $12,522 and car and truck expenses of $16,201 reported on Schedule C, Profit or Loss From Business. By statutory notice of deficiency, dated July 3, 2019, respondent determined a deficiency in petitioner's federal income tax and an accuracy-related penalty pursuant to section 6662(a)[1] for the tax year at issue of $5,883 and $1,177, respectively. Respondent disallowed those deductions on the grounds that petitioner "did not establish that the business expense shown on [his] tax return was paid or incurred during the taxable year and that the expense was ordinary and necessary to [his] business."

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

**[*2]**  After concessions,[2] the issues for decision are whether petitioner is entitled to deduct Schedule C (1) other expenses of $12,522 and (2) car and truck expenses of $16,201 reported on his 2016 tax return. As discussed below, we find for respondent with respect to both issues.

## FINDINGS OF FACT

This case was tried during the Court's Los Angeles, California, remote trial session. At trial the parties stipulated to most of the facts, which are so found. Petitioner resided in California when he timely filed his Petition.

On his 2016 Schedule C petitioner reported his principal business as providing "consulting, teaching, and technical services." During 2016 petitioner's business had gross receipts of $16,476, and he claimed deductions for Schedule C car and truck expenses of $16,201, insurance expenses (other than health) of $1,448, utilities expenses of $725, and other expenses of $12,522.[3] For 2016 petitioner reported that his Schedule C business activities did not generate a profit; rather, his activities generated expenses totaling $30,896 resulting in a loss of $14,420.

I.  *Petitioner's Background*

From 1975 until 2014 petitioner worked as an attorney licensed in California. In 2008 the Los Angeles County Superior Court declared petitioner to be a vexatious litigant for commencing, prosecuting, and maintaining numerous unmeritorious litigations. As a result of being declared a vexatious litigant petitioner was ordered to post security of $20,000 and became subject to a prefiling order preventing him from litigating a case in which he was a party without first obtaining judicial leave to do so. Among the reasons for declaring petitioner a vexatious litigant were baseless property lawsuits petitioner brought against his neighbor in Laguna Beach, California. Petitioner sued his neighbor (and lost) for the denial of the use of a purported property easement, claiming his neighbor had wrongly erected a fence. Petitioner unsuccessfully appealed the state court's decision, and the California Court of Appeal,

---

[2] Respondent conceded that petitioner is not liable for the accuracy-related penalty under section 6662(a).

[3] Except as otherwise noted, all dollar amounts relate to petitioner's 2016 tax return and his original Schedule C filed.

[*3] Fourth Appellate District, found that petitioner had "no interest in the [property] that would support any of his causes of action."

Petitioner's lawsuits against his neighbors continued with a house that he had purchased along with Kimberly Kempton, as tenants in common, on Fernwood Avenue in the Silver Lake neighborhood of Los Angeles, California.[4] Similar to the lawsuits brought against petitioner's neighbor in Laguna Beach, the lawsuits concerning the Fernwood property involved property disputes—that is, a fence and a purported property easement having to do with a driveway. The lawsuits were brought against a neighbor, Cooper, and the former owner of the Fernwood property, Clark. Petitioner was unsuccessful in the initial lawsuits brought against Cooper and Clark, as well as in the subsequent appeals. Petitioner used Kempton as a strawman to circumvent the 2008 vexatious litigant order, and he stood to personally benefit from the Fernwood property litigation since he was an owner of the property at issue. Petitioner was again declared a vexatious litigant by the California Court of Appeal for bringing the aforementioned lawsuits.

In 2012 the Office of the Chief Trial Counsel of the State Bar of California filed disciplinary charges against petitioner and charged him with eight counts of misconduct. In 2014 the misconduct charges were reviewed by the State Bar Court of California, Review Department (review department), which recommended that petitioner be disbarred from the practice of law. Some of the lawsuits referenced by the review department in recommending petitioner's disbarment involved disputes between petitioner, Kempton, Cooper, and Clark. As of December 15, 2014, petitioner was no longer permitted to practice law because of the order of inactive enrollment filed by the review department. On May 25, 2016, the Supreme Court of California filed an order disbarring petitioner from the practice of law in California. Petitioner was officially disbarred on June 24, 2016.

---

[4] Petitioner initially filed a lawsuit in both his and Kempton's names as co-owners of the property but subsequently amended the lawsuit to withdraw himself as a party because of the 2008 vexatious litigant order. However, petitioner remained the attorney for the lawsuit relating to the Fernwood property.

**[\*4]** II.     *Petitioner's 2016 Schedule C Business Activities*[5]

On his 2016 return petitioner reported adjusted gross income of $87,184 from sources separate from his Schedule C business activities. This income was derived from Social Security benefits, dividends, pensions and annuities, and rents from his real estate properties. Petitioner's Schedule C business activities for the year at issue did not generate a profit; rather, they resulted in a loss of $14,420. Petitioner's claimed Schedule C business activities and associated expenses predominantly stem from litigation relating to challenging his disbarment in California, his prior property easement disputes, and lawsuits that would otherwise personally benefit him. For ease of understanding, each of the aforementioned business activity categories will be individually described below.

A.     *Activities Relating to Vexatious Litigant Declaration and Disbarment*

In the tax year at issue petitioner filed a complaint in the U.S. District Court for the Northern District of California (northern district) seeking to reverse the prior California Court of Appeal decision requiring petitioner to post security as a vexatious litigant. The northern district dismissed petitioner's cause of action with prejudice for lack of jurisdiction. Petitioner then appealed the northern district's decision to the U.S. Court of Appeals for the Ninth Circuit, which affirmed the northern district's dismissal. In its decision the Ninth Circuit stated that petitioner's claim amounted to a forbidden de facto appeal of a prior state court judgment.

---

[5] The record is silent as to the source of the $16,476 that respondent concedes was generated by petitioner's Schedule C business in the tax year at issue. This silence, coupled with the amorphic nature of petitioner's claimed business activities, makes it difficult to ascertain whether any of petitioner's expenses at issue are ordinary and necessary to his Schedule C business. Respondent argues that petitioner has not shown which activities were engaged in for profit or how his disjointed activities are one activity for purposes of section 183. We agree with respondent on this point. Having a business with various different components does not, in and of itself, preclude a taxpayer from arguing that they constitute one business for purposes of section 183. *See* Treas. Reg. § 1.183-1(d)(1). However, since petitioner's claimed expense deductions are personal or otherwise excluded under the Code, we need not consider whether petitioner's 2016 Schedule C activities at issue here—either individually or collectively—were entered into with the requisite profit motive. *See* Treas. Reg. § 1.183-2(a).

**[*5]** Furthermore, petitioner's reported Schedule C business expenses relating to his attempt to overturn his disbarment included filing an additional complaint in the northern district alleging a Sherman Act violation by the California State Bar. The northern district granted the State Bar's motion to dismiss. Petitioner appealed the case to the Ninth Circuit, which affirmed the northern district's decision.

### B. *Activities Relating to Prior Property Disputes*

Many of petitioner's reported Schedule C business expenses relate to the 2008 postjudgment award Clark received for attorney's fees and costs associated with the residential purchase agreement of the Fernwood property. In 2005 petitioner, along with Kempton, purchased a residential property from Clark. The agreement that governed the transaction included a prevailing party clause for litigation stemming from the sale. Petitioner filed various lawsuits concerning the Fernwood property, including a cross-action claim of unmerchantable title against Clark. In 2008 Clark successfully defended herself and was awarded $9,349 in attorney's fees and costs. Petitioner and Kempton additionally brought a lawsuit against Clark alleging that she committed fraud by failing to disclose material defects relating to the Fernwood property.

In 2010 Clark declared bankruptcy, in substantial part because of the economic hardship of defending herself against petitioner's claims. After Clark was discharged from bankruptcy in 2012, the U.S. Bankruptcy Court for the Central District of California issued an order that "[a]ll of [Clark's] right to recovery [of] attorneys' fees and costs from Kempton and [petitioner] arising from the . . . Fernwood [p]roperty are deemed to have been abandoned by the Trustee." The bankruptcy court further stated that "the amount of fees, if any, recoverable under the [Fernwood sale agreement] and California law 'will be adjudicated in the state court.'" In state court Clark prevailed on her motion for attorney's fees and costs in the lawsuit alleging fraud and for successfully defending against petitioner and Kempton's appeal therefrom.

In 2013 Clark sought to enforce the 2008 award of attorney's fees and costs against petitioner and Kempton. Petitioner attempted to evade paying the award by asserting a claim of exemption—namely, that the funds Clark sought belonged to his mother's trust and/or estate and not petitioner himself. Clark filed a motion to determine the validity of petitioner's claim of exemption, which the trial court denied, allowing petitioner's funds to be levied upon to pay Clark's attorney's fees and

**[*6]** costs award. Petitioner's appeal of the award order on behalf of his mother's trust and estate was dismissed for lack of standing.

In 2014 Clark was awarded additional fees for services her attorneys performed while attempting to enforce the 2008 attorney's fees and costs award. Attorneys for petitioner, for his mother's estate, and for Kempton appealed the award of fees, but the appeal was dismissed as to Kempton and petitioner's mother's estate for lack of standing. The California Court of Appeal, Second Appellate District, affirmed the award of attorney's fees and costs as to petitioner, rejecting his argument that pending state and federal appeals automatically stayed the action and precluded the trial court's award of fees. Additionally, in 2014 Clark sought to enforce a 2012 award of attorney's fees and costs that the trial court granted for successfully defending herself against petitioner's and Kempton's appeal from the initial 2008 award. Petitioner again filed a claim of exemption, which was denied, and his funds were allowed to be levied upon to pay the attorney's fees and costs award.

In the tax year at issue petitioner appealed the adverse decision in the contractual fraud case against Clark. And, in an effort to continue to thwart Clark's attorney's fees and costs award collection efforts, petitioner filed a complaint under the Fair Debt Collection Practices Act in the U.S. District Court for the Central District of California (central district) in the case of *Kinney v. Marcus*, No. 2:16-cv-03279-PSG-JC, 2016 WL 10894315 (C.D. Cal. July 15, 2016). The central district dismissed petitioner's case for failure to state a claim. In its order the central district highlighted petitioner's "long history of filing meritless, frivolous, and harassing litigation." Petitioner appealed the decision to the Ninth Circuit where in 2017 it was affirmed since it constituted a de facto appeal of prior state court judgments.[6]

C.      *Petitioner's Other Activities*

Petitioner claimed to have been involved in whistleblowing activities in the tax year at issue. These activities consisted of filing a complaint in the central district against his Laguna Beach property neighbors and the Three Arch Bay Community Service District (TAB), alleging violations of the Clean Water Act (CWA). TAB operates a

---

[6] In the tax year at issue petitioner also brought lawsuits against a federal judge and the Clerk of the California Court of Appeal, Fourth Appellate District. Both lawsuits were dismissed for violating the doctrine of judicial immunity.

[*7] municipal storm sewer system. Petitioner accused TAB and his neighbors of discharging pollutants into the ocean without a permit. Petitioner's CWA complaint was dismissed by the central district on June 15, 2017, for lack of jurisdiction.

Petitioner also claimed that he used his two Toyota Corollas, which were commercially registered (under California state law), in a "transportation of property" for hire business. Petitioner also claimed that he provided data entry services. Lastly, petitioner claims to be the executor of his late mother's estate.

III. *Petitioner's 2016 Schedule C Business Expenses*[7]

On petitioner's original Schedule C respondent disallowed his claimed deduction for car and truck expenses of $16,201, which relate to petitioner's vehicles used in his purported transportation business. Respondent disallowed petitioner's deductions for other expenses of $12,522.[8] The following were reported as "other expenses."[9]

A. *Court Filing Fees and Associated Expenses*

Petitioner claimed a deduction of $4,649 for court fees. The court fees comprise the costs of copying, printing, and filing petitioner's various lawsuits and appeals having to do with his vexatious litigant declaration, disbarment, and personal property disputes. Petitioner also

---

[7] After respondent issued the notice of deficiency, petitioner submitted two revised Schedules C on which he seeks deductions for expenses in addition to those already claimed on the original Schedule C filed with his 2016 tax return. Respondent argues that he could not have made any concessions with respect to the newly claimed expenses in the notice of deficiency. We agree with respondent on this point. Petitioner's latest revised Schedule C increased the reported other expenses from $12,522 to $36,220. Seemingly, in an effort to justify the newly added expenses, petitioner changed the description of his business on his latest Schedule C from "Consulting, Teaching, and Technical Services" on his original Schedule C to "Data Entry, Consulting, Tech. Serv., [and] Whistle-Blower." Petitioner did not amend his 2016 tax return to claim these additional deductions.

[8] The combined total of petitioner's 2016 Schedule C other expenses as listed herein is $12,521, rather than $12,522 (as reflected on his 2016 tax return). This discrepancy results from petitioner's claiming an additional deduction of $1, which he used as a placeholder to add additional expenses and does not relate to an actual expense.

[9] To support these deductions petitioner provided receipts and invoices.

**[*8]** claimed a deduction of $405 for the cost of postage and delivery charges related to the aforementioned lawsuits and appeals.

### B.     *Insurance Expenses*

Petitioner claimed a deduction of $2,200 for a Northwestern Mutual life insurance policy. Petitioner also claimed a deduction of $284 for a State Farm personal liability umbrella insurance policy, which provides dwelling, personal property, loss of use, and personal liability protection. Lastly, petitioner claimed a deduction of $80 for a Diver's Alert Network supplemental insurance policy that covers diving, nondiving, and named water sports accidents and injuries.

### C.     *Miscellaneous Expenses*

Petitioner claimed a deduction for the following expenses: (1) three Turbo Tax subscriptions of $135; (2) a preparer tax identification number (PTIN) registration of $50; (3) a landline telephone, a fax number, two cell phones, and internet access of $2,436; (4) a CourtCall Appearance fee of $86; (5) access to the Public Access to Court Electronic Records (PACER), which provides electronic public access to federal court records, of $41; (6) a Bank of America safe deposit box of $51; (7) Waste Management garbage disposal of $487; (8) Pacific Gas and Electricity (PG&E) gas and electricity bills of $241; and (9) Amezcua-Moll & Associates, P.C., legal fees of $1,376.

## OPINION

### I.     *Burden of Proof*

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his correct tax liability. I.R.C. § 6001. In addition, "the taxpayer bears the burden of substantiating the amount and purpose of the claimed deduction." *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001).

**[\*9]** When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court may sometimes estimate the amount allowable as a deduction. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

The burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability and establishes that he or she complied with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, to maintain required records, and to cooperate with the Commissioner's reasonable requests. I.R.C. § 7491(a)(1) and (2). While the documentation petitioner provided shows that certain expenses were paid, there was no credible evidence introduced as to the business purpose of the expenses or that the expenditures were ordinary and necessary for the purpose indicated. Accordingly, the burden will remain with petitioner. *See id.*

II.     *Summary of the Parties' Arguments*

Petitioner maintains that he paid all business expenses reported on his original Schedule C and also seeks a deduction for additional expenses for the tax year at issue on the basis of a revised Schedule C offered at trial. Petitioner avers that his expenses incurred were "ordinary and necessary" to protect his business from "destruction by those taking advantage of void orders and/or improper rulings to the detriment of [petitioner's] ongoing business, goodwill and properties." Finally, petitioner claims that his vehicles were used for his business operations, noting that the vehicles were registered in California as commercial vehicles.

In response, respondent argues that petitioner is not entitled to deduct any Schedule C other expenses or car and truck expenses for the tax year at issue. Respondent contends that petitioner has failed to show that the deductions sought meet the requirements of section 162(a). Further, respondent argues that petitioner has not established that he engaged in any business activities for profit during the tax year at issue. Finally, respondent contends that petitioner has failed to meet the strict substantiation requirements with respect to travel and vehicle or

**[\*10]** mileage expenses required under section 274(d), since no documentation of these expenses was provided.

III.    *Legal Background*

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." To be entitled to a deduction under this section, the taxpayer must show that he or she engaged in the activity with an "actual and honest objective of making a profit." *Hulter v. Commissioner*, 91 T.C. 371, 392 (1988) (quoting *Ronnen v. Commissioner*, 90 T.C. 74, 91 (1988)); *see also Magassy v. Commissioner*, 140 F. App'x 450, 455 (4th Cir. 2005), *aff'g* T.C. Memo. 2004-4; *Vest v. Commissioner*, T.C. Memo. 2016-187, at \*10, *aff'd*, 690 F. App'x 210 (5th Cir. 2017). No deduction is allowed for "personal, living, or family expenses." I.R.C. § 262(a).

Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. *See Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, *Deputy v. du Pont*, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, *Commissioner v. Heininger*, 320 U.S. at 471; Treas. Reg. § 1.162-1(a).

The deductibility of legal fees depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities. *See United States v. Gilmore*, 372 U.S. 39, 48–49 (1963). The Supreme Court stated that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test." *Id.* at 49. Therefore, in order for petitioner's legal fees to be deductible on his Schedule C, they must have originated in his work as a licensed attorney and not in personal matters. Section 262 takes precedence over section 162. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 17 (1974); *Sharon v. Commissioner*, 66 T.C. 515, 522–23 (1976), *aff'd per curiam*, 591 F.2d 1273 (9th Cir. 1978). Consequently, if the origin of petitioner's claimed deductions is personal as defined under section 262, we need not consider whether they are ordinary and necessary to his Schedule C business activities.

**[*11]** Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and lodging while away from home, and expenses with respect to listed property as defined in section 280F(d)(4). *See Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969). Consequently, even if such an expense would otherwise be deductible, section 274 may still preclude a deduction if the taxpayer does not present sufficient substantiation. Temp. Treas. Reg. § 1.274-5T(a).[10] Among other categories referenced above, the heightened substantiation requirements of section 274(d) apply to "listed property"[11] as defined in section 280F(d)(4), which includes passenger automobiles.

Temporary Treasury Regulation § 1.274-5T(c)(2) provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expenses, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. The Court may not use the rule established in *Cohan* to estimate expenses covered by section 274(d). *Sanford*, 50 T.C. at 827; Temp. Treas. Reg. § 1.274-5T(a). Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure (including the above-mentioned elements), supported by corroborative documentary evidence that carries with it a high degree of probative value. Temp. Treas. Reg. § 1.274-5T(c)(1). If a taxpayer does not satisfy the adequate records requirement with respect to one or more elements, he or she may substantiate those elements with his or her own detailed statement and with other corroborative evidence. *Id.* subpara. (3).

Moreover, deductions are not allowed for premiums paid on any life insurance policy if the taxpayer is directly or indirectly a beneficiary

---

[10] To be entitled to a deduction for these expenses, the taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense, (2) the time and place of the expense, and (3) the business purpose of the expense. I.R.C. § 274(d); Temp. Treas. Reg. § 1.274-5T(a), (b), and (c).

[11] "Listed property" as defined in section 280F(d)(4) includes passenger automobiles, which are defined as four-wheeled vehicles weighing under 6,000 pounds and manufactured primarily for use on public streets and highways. I.R.C. § 280F(d)(5)(A). A passenger automobile does not include any ambulance, hearse, or vehicle used by the taxpayer directly in a trade or business of transporting persons or property for compensation or hire. *See* I.R.C. § 280F(d)(5)(B); *Hatte v. Commissioner*, T.C. Memo. 2019-109, at *7 n.3.

**[\*12]** under the policy or contract. I.R.C. § 264(a)(1); *see Ong v. Commissioner*, T.C. Memo. 2012-114, 2012 WL 1409329, at \*5 (stating that the taxpayer has the burden of proof to provide a copy of the insurance policy or other documentation listing beneficiaries).

IV.   *Analysis*

   A.   *Schedule C Other Expense Deductions Disallowed*

      1.   *Petitioner's Schedule C Litigation Expenses*

Petitioner argues that the litigation expenses at issue arose when he was engaged in a professional capacity as an attorney representing his client's interests rather than his own. Respondent contends petitioner's expenses (court filings fees and copying, printing, and mailing costs) are personal and nondeductible since they are associated with petitioner's disbarment, vexatious litigant declaration, and prior property disputes with his neighbors. *See* I.R.C. § 262(a). We agree with respondent.

After carefully reviewing the record and considering all the facts, we find that the origin of the claim underlying petitioner's disbarment, vexatious litigant declaration, and prior property disputes is personal and the litigation expenses at issue here are nondeductible. *See* I.R.C. § 262(a); *Gilmore*, 372 U.S. at 48–49.

Petitioner also argues that the lawsuits and appeals were filed[12] to protect his Schedule C self-employment business from destruction, on the basis of his assertion that the vexatious litigant orders were void and used to "justify, excuse, absolve, support or rationalize subsequent acts that continued the attempted 'destruction' [his] business," therefore concluding that the associated expenses (e.g., the court filings fees and copying, printing, and mailing costs) were ordinary and necessary expenses associated with his self-employment business. We find petitioner's argument to be without merit. Nothing in the record suggests that individuals were taking advantage of or threatening to destroy petitioner's business. It was petitioner who chose to make full use of the judicial system to challenge his vexatious litigant declaration

---

[12] No court has yet overturned either the vexatious litigant declaration or the disbarment that petitioner claims to be invalid. Petitioner testified at trial that all of the appeals filed in 2016 were dismissed.

**[\*13]** and disbarment, and no evidence was presented as to how his status as a disbarred attorney affects his self-employment business.

Additionally, petitioner argues that none of his 2016 expenses relate to regaining his status as an attorney. This assertion contradicts evidence in the record. In any event, section 162(a) does not allow for the deduction of fees paid and costs incurred to gain admission to a state bar. *See Sharon*, 66 T.C. at 527; *Ryman v. Commissioner*, 51 T.C. 799, 801–03 (1969). Moreover, expenses incurred with the goal of protecting one's reputation are also irrelevant and nondeductible. *See Vannier v. Commissioner*, T.C. Memo. 1997-370, 1997 WL 459741, at \*4. Consequently, even if we determined that the origin of petitioner's disbarment was not personal (and litigation stemming therefrom deductible), the expenses would nonetheless be nondeductible since they fail to satisfy section 162(a).

Petitioner claims to have been a whistleblower in the tax year at issue and claimed a deduction for litigation expenses pertaining to his lawsuit against TAB for purported violations of the CWA. Petitioner argues that he should be allowed to deduct his whistleblowing litigation expenses, similarly to the taxpayer in *Bagley v. United Sates*, 963 F. Supp. 2d 982 (C.D. Cal. 2013). Petitioner's reliance on *Bagley* is inappropriate.[13] Unlike the taxpayer's expenses in *Bagley*, petitioner's whistleblowing expenses are personal and nondeductible, since his whistleblowing activities were merely a continuation of his personal lawsuits against his Laguna Beach neighbors brought under the guise of alleging a CWA violation and not business expenses under section 162. *See id.* at 1001; *Kinney v. Three Arch Bay Cmty. Servs. Dist.*, 2017 WL 2999684, at \*1 (C.D. Cal. June 15, 2017), *aff'd*, 723 F. App'x 553 (9th Cir. 2018).

Petitioner also claimed a deduction for expenses associated with lawsuits he filed against a federal judge and the Clerk of the California Court of Appeal, Fourth Appellate District. Respondent argues that these expenses are personal and nondeductible under section 162, and we agree. *See* I.R.C. § 262(a).

---

[13] The court in *Bagley* analyzed whether the taxpayer's whistleblowing activities with respect to his False Claim Act lawsuit were entered into for profit under the nine factors listed in Treasury Regulation § 1.183-2(b). *See Bagley*, 963 F. Supp. 2d at 995. Moreover, the court noted that the deductibility of litigation expenses under section 162 depends on the origin of the claim. *Id.* at 1000.

**[\*14]** Accordingly, respondent's disallowance of petitioner's deduction for litigation expenses is sustained.

### 2. *Insurance Expenses*

Petitioner is not entitled to deduct the cost of his Northwestern Mutual life insurance policy since he did not provide proof that he was not directly or indirectly a beneficiary of the policy. *See Ong v. Commissioner*, 2012 WL 1409329, at \*5. Petitioner provided only an invoice for his life insurance policy, which did not identify the policy's beneficiaries. Therefore, petitioner has not met his burden of proof with respect to the life insurance policy, and respondent's disallowance of the deduction is sustained. Nor is petitioner entitled to deduct the cost of his State Farm personal liability umbrella insurance policy. *See Minick v. Commissioner*, T.C. Memo. 2010-12, 2010 WL 199954, at \*6 (stating that personal insurance premiums are not deductible as business expenses). Similarly, petitioner is not entitled to deduct the cost of his Diver's Alert Network insurance policy since nothing in the record would suggest that a supplemental diver's insurance policy is an ordinary and necessary expense related to petitioner's Schedule C business.

Consequently, respondent's disallowance of petitioner's deduction for insurance expenses is sustained.

### 3. *Miscellaneous Expenses*

Petitioner is not entitled to deduct the cost of his three Turbo Tax subscriptions or PTIN registration as ordinary and necessary business expenses for his Schedule C business. Aside from petitioner's own self-serving trial testimony that he performs data entry services for Turbo Tax, there is not any documentary evidence—such as a contract, invoice, payment, or similar business record—to substantiate these expenses under section 162.[14] Accordingly, respondent's disallowance is sustained.

Nor is petitioner entitled to deduct expenses for his landline telephone, a fax number, two cell phones, internet access, Waste Management garbage disposal, or PG&E gas and electricity bills. Aside from invoices for the above-mentioned expenses, the only evidence in the record supporting his contention that they are deductible business

---

[14] We are not compelled to accept petitioner's unsubstantiated, conclusory, and self-serving statements without additional evidence. *See Johnson v. Commissioner*, T.C. Memo. 1999-127, *aff'd*, 246 F.3d 674 (9th Cir. 2000).

**[\*15]** expenses (rather than personal) is petitioner's own self-serving testimony. Therefore, respondent's disallowance of any deduction for these expenses is sustained.

Petitioner is not entitled to deduct expenses for costs associated with his Bank of America safe deposit box, access to PACER, or CourtCall Appearance. In support of his deduction of the CourtCall Appearance fee, petitioner provided an invoice that lists him as the attorney. It is undisputed that petitioner was suspended from the practice of law in 2014 and then permanently disbarred in 2016; therefore, he was legally allowed neither to represent a client in 2016 nor to deduct the expense under section 162 when his law practice was effectively extinguished in 2014. For similar reasons, petitioner is not entitled to deduct an expense for PACER access as nothing in the record implies that the expense was ordinary or necessary to his purported consulting, teaching, and technical services business. Petitioner testified that the safe deposit box was used to store duplicate wills that he had from his practice as an attorney. However, petitioner was under an ethical obligation, upon his suspension from the practice of law in 2014, to return the wills to his clients.[15] Accordingly, respondent's disallowance of a deduction for the safe deposit box expense is sustained.

Petitioner is not entitled to deduct legal fees paid to Amezcua-Moll & Associates. Petitioner testified that that he used Amezcua-Moll & Associates' legal services in an effort to remove from his properties liens that were filed as a result of Clark's attorney's fees and costs award. We have already determined that the origin of petitioner's prior property dispute (which resulted in Clark's being awarded attorney's fees and costs) is personal and therefore expenses are nondeductible under section 162. Accordingly, petitioner's claimed deduction for expenses paid to prevent Clark's collection efforts is likewise personal and nondeductible. *See* I.R.C. § 262. Thus, respondent's disallowance of the Amezcua-Moll & Associates legal fees deduction is sustained.

B.     *Schedule C Car and Truck Expense Deduction Disallowed*

Petitioner (incorrectly) concludes that because his two vehicles are registered in California as commercial vehicles they are not passenger automobiles under the Code. The Code and applicable regulations make no distinction between a vehicle's state registration and whether it is "listed property" under section 280F(d)(4). Further,

---

[15] *See* Model Rules for Law. Disciplinary Enf't r. 27 (Am. Bar Ass'n 2002).

**[\*16]** petitioner did not show that his vehicles were qualified nonpersonal use vehicles, making his vehicles otherwise exempt from the substantiation requirements of section 274(d). *See Palmer v. Commissioner*, T.C. Memo. 1997-462, 1997 WL 625468, at \*3. Petitioner has failed to present a contemporaneous travel log or other sufficient evidence necessary to meet the strict substantiation requirements of section 274(d). Consequently, setting aside the issue of whether the expense is ordinary and necessary under section 162, there is insufficient evidence to support a finding that petitioner is entitled to a deduction for car and truck expenses for tax year 2016 under the strict substantiation requirements of section 274. Accordingly, respondent's disallowance of a deduction for petitioner's car and truck expenses is sustained.

V.      *Conclusion*

We have carefully reviewed the record and listened to petitioner's testimony at trial and find that he is not entitled to deduct any expense in excess of what respondent already allowed.

We have considered all of the arguments that the parties made and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a).*